1    Christopher Kao, Bar No. 237716
     CKao@perkinscoie.com
2    PERKINS COIE LLP
     3150 Porter Drive
3    Palo Alto, CA  94304-1212
     Telephone:  650.838.4300
4    Facsimile:  650.838.4350

5    David J. Tsai, Bar No. 244479
     DTsai@perkinscoie.com
6    PERKINS COIE LLP
     Four Embarcadero Center, Suite 2400
7    San Francisco, CA  94111-4131
     Telephone:  415.344.7000
8    Facsimile:  415.344.7050

9    Attorneys for Plaintiff
     Shoom, Inc.

10

11                      UNITED STATES DISTRICT COURT

12                    NORTHERN DISTRICT OF CALIFORNIA

13

14   SHOOM, INC.,                          Case No. C-07-05612 JSW

15                      Plaintiff,          **PLAINTIFF SHOOM, INC.'S MOTION TO
                                            ENFORCE THE COURT'S FINAL
16         v.                               JUDGMENT; MEMORANDUM OF
                                            POINTS AND AUTHORITIES IN
17   ELECTRONIC IMAGING SYSTEMS OF          SUPPORT THEREOF**
     AMERICA, INC.,
18                                          Date:        September 2, 2011
                        Defendant.          Time:        9:00 a.m.
19                                          Courtroom:  11, 19th Floor
                                            Judge:       Hon. Jeffrey S. White
20

21

22

23

24

25

26

27

28

PLAINTIFF SHOOM, INC'S MOTION TO
ENFORCE THE COURT'S  FINAL JUDGMENT
Case No. C-07-05612 JSW

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION TO ENFORCE THE COURT'S FINAL
JUDGMENT ................................................................................................................ 1

MEMORANDUM OF POINTS AND AUTHORITIES ............................................... 1

STATEMENT OF FACTS ........................................................................................... 3

        A.     Shoom's Business ............................................................. 3

        B.     eISA Threats Against Shoom and Its Customers ............. 4

        C.     The Present Action .......................................................... 5

        D.     eISA's Assignment of the Patents-in-Suit to Source 3 .... 6

        E.     Source 3's Action Against USA TODAY International Corporation
and Continued Threats Against Shoom's Customers ...... 7

        F.     Reexamination of the '837 Patent .................................. 8

ARGUMENT ................................................................................................................ 8

    I.     ThE Court Has THE Authority to Enforce Its FINAL Judgment BY
Entering a permanent injunction .................................................. 8

    II.     THE COURT SHOULD ENTER A PERMANENT INJUNCTION
BARRING RE-LITIGATION OF SHOOM'S AND ITS CUSTOMERS'
ALLEGED INFRINGEMENT OF THE PATENTS-IN-SUIT ............ 10

        A.     The *Kessler* Doctrine Supports Entry of Permanent Injunction ............... 10

        B.     *Res Judicata* Principles Also Support Entry Of A Permanent
Injunction ..................................................................... 12

    III.     THE COURT CAN EXTEND A PERMANENT INJUNCTION TO ANY
ASSIGNEES OF THE PATENTS-IN-SUIT .................................... 14

    IV.     THE EBAY FACTORS FOR ENTRY OF A PERMANENT
INJUNCTION ARE SATISFIED IN THIS CASE ............................. 15

CONCLUSION ............................................................................................................ 16

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**CASES**

*Am. Express Travel Related Servs. Co., Inc. v. D & A Corp.*,
 2007 WL 2462080 (E.D. Cal. Aug. 28, 2007) ........................................................................ 13

*Aspex Eyewear, Inc., et al., v. Marchon Eyewear Inc., et. al.*,
 2010 WL 4553642, *4 (S.D. Fla. Nov. 3, 2010) .................................................................... 12

*Bradberry v. T-Mobile USA, Inc.*,
 2007 WL 2221076 (N.D. Cal. Aug. 2, 2007) ........................................................................ 16

*Carey v. U.S.*,
 2010 WL 1904841 (E.D. Cal. May 7, 2010) .......................................................................... 13

*Center for Food Safety v. Vilsack*,
 2011 WL 996343 (N.D. Cal. March 17, 2011) ...................................................................... 16

*Credit Bureau Connection, Inc. v. Pardini*,
 726 F. Supp. 2d 1107 (E.D. Cal. 2010) ................................................................................. 15

*E. & J. Gallo Winery v. Gallo Cattle Co.*,
 967 F.2d 1280 (9th Cir.1992) ................................................................................................ 15

*eBay Inc. v. Mercexchange, L.L.C.*,
 547 U.S. 388 (2006) ............................................................................................................... 15

*eISA v. Gannett Co., Inc, et al*,
 Civil Action No: 07-CV-791 .................................................................................................... 5

*eISA v. MerlinOne, Inc. et al.*,
 Case No. 07-CV-1490 ............................................................................................................... 8

*Federated Dep't Stores, Inc. v. Moitie*,
 452 U.S. 394 (1981) ............................................................................................................... 14

*Golden State Bottling Co., Inc. v. Nat'l Labor Relations Bd.*,
 414 U.S. 168 (1973) .......................................................................................................... 14, 15

*Headwaters Inc. v. U.S. Forest Service*,
 399 F.3d 1047 (9th Cir. 2005) ............................................................................................... 13

*Heartland By-Products, Inc. v. U.S.*,
 424 F.3d 1244 (Fed. Cir. 2005) ............................................................................................... 9

*Hoffman v. Wisner Classic Mfg. Co., Inc.*,
 927 F. Supp. 67 (E.D.N.Y. 1996) .......................................................................................... 12

*In re Garcia*,
   313 B.R. 307 (9th Cir. BAP 2004) ........................................................................................ 13

*In re Mfrs. Life Ins. Co. Litig.*,
   2008 WL 4950939 (S.D. Cal. Nov. 18, 2008) ........................................................................ 9

*Kessler v. Eldred*,
   206 U.S. 285 (1907) ....................................................................................................... passim

*Kloster Speedsteel AB v. Crucible Inc.*,
   793 F.2d 1565 (Fed. Cir. 1986), *overruled on other grounds*, *Knorr-Bremse Systeme
   Fuer Nutzfahrzeuge GmbH v. Dana Corp.*, 383 F.3d 1337 (Fed Cir. 2004) ......................... 15

*Leishman v. Radio Condenser Co.*,
   167 F.2d 890 (9th Cir. 1948) ................................................................................................. 10

*Leon v. IDX Sys. Corp.*,
   464 F.3d 951 (9th Cir. 2006) ................................................................................................... 9

*MedImmune, Inc. v. Genentech, Inc.*,
   549 U.S. 118 (2007) ................................................................................................................. 4

*Meyer Mfg. Co. v. Miller Mfg. Co.*,
   24 F.2d 505 (7th Cir. 1928) ................................................................................................... 13

*MGA, Inc. v. Gen. Motors Corp.*,
   827 F.2d 729 (Fed. Cir. 1987) ............................................................................................... 10

*MGM Studios v. Grokster, Ltd.*,
   518 F.Supp.2d 1197 (2007) .................................................................................................... 16

*Morris v. Jones*,
   329 U.S. 545 (1947) ............................................................................................................... 13

*Powell v. McCormack*,
   395 U.S. 486 (1969) ................................................................................................................. 9

*Providence Health Plan v. McDowell*,
   385 F.3d 1168 (9th Cir. 2004) ............................................................................................... 12

*Regal Knitwear Co. v. NLRB*,
   324 U.S. 9 (1945) ................................................................................................................... 15

*Rent-A-Center, Inc. v. Canyon Television & Appliance Rental, Inc.*,
   944 F.2d 597 (9th Cir. 1991) ................................................................................................. 15

*Shoom v. eISA*,
   Case No. 05-CV-3434 (Jenkins, J.) ("*Shoom v. eISA I*") ....................................................... 4

*Taylor v. Sturgell*,
  553 U.S. 880 (2008) ........................................................................................ 13

*Tech. Licensing Corp. v. Thomson, Inc.*,
  738 F. Supp.2d 1096 (E.D. Cal. 2010) ............................................................ 12

*Trs. of IL WU-PMA Pension Plan v. Peters*,
  660 F. Supp. 2d 1118 (N.D. Cal. 2009) (White, J.) ........................................ 9

*U.S. Galvanizing & Plating Equip. Corp. v. Hanson-Van Winkle-Munning Co.*,
  104 F.2d 856 (4th Cir. 1939) ....................................................................... 9, 10

*U.S. v. Hanover Ins. Co.*,
  82 F.3d 1052 (Fed. Cir. 1996) ......................................................................... 9

*Unitronics Ltd. v. Gharb*,
  532 F. Supp.2d 25 (D.D.C. 2008) .................................................................. 10

*Vermont Structural Slate Co., Inc. v. Tatko Bros. Slate Co., Inc.*,
  253 F.2d 29 (2d Cir. 1958) ......................................................................... 9, 14

*Whitley v. Swayne*,
  74 U.S. 685 (1868) .......................................................................................... 13

*Worley v. Tobacco Co.*,
  104 U.S. 340 (1881) ........................................................................................ 13

**STATUTES**

28 U.S.C. § 2201(a) ............................................................................................ 13

28 U.S.C.§ 2202 ........................................................................................... 1, 3, 9

28 U.S.C. § 2202 (2) ............................................................................................ 8

35 U.S.C. § 305 .................................................................................................. 12

All Writs Act, 28 U.S.C. § 1651(a), and (3) ....................................................... 8

All Writs Act, 28 U.S.C. § 1651(a) ............................................................. 1, 3, 9

an Act of Congress ............................................................................................... 9

**OTHER AUTHORITIES**

18A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and
  Procedure* § 4442 (2d ed. 2002) ................................................................... 13

Rule 65(d) of the Federal Rules of Civil Procedure ................................... 14, 15

Restatement (Second) of Judgments § 43 (1982) ........................................................................ 13

San Francisco Chronicle ........................................................................................................... 2, 3

San Jose Mercury News .............................................................................................................. 2, 3

U.S. Patent Nos. 7,099,837 .................................................................................................. passim

### NOTICE OF MOTION AND MOTION TO ENFORCE
### THE COURT'S FINAL JUDGMENT

PLEASE TAKE NOTICE that on September 2, 2011, at 9:00 a.m., or as soon thereafter as this matter may be heard, in Courtroom 11 of the United States District Court for the Northern District of California, San Francisco Division, the Honorable Jeffrey S. White presiding, Plaintiff Shoom, Inc. ("Shoom"), by and through its attorneys, will and hereby moves pursuant to 28 U.S.C.§ 2202, the All Writs Act, 28 U.S.C. § 1651(a), and the Court's inherent power for an order enforcing the Court's April 25, 2008 Judgment (Dkt. 23). In further support of this Notice of Motion and Motion, Shoom submits the accompanying Memorandum of Points and Authorities filed herewith, and further bases its motion on all pleadings and papers filed in this action, accompanying Declarations of William J. Freschi, Jr. ("Freschi Decl.") and David J. Tsai ("Tsai Decl."), and upon such other matters as may be presented to the Court at the time of the hearing.

### MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

Plaintiff Shoom, Inc. ("Shoom") returns to this Court to seek an end to Defendant Electronic Imaging Systems of America, Inc.'s ("eISA") seemingly never-ending scourge of litigation against and harassment of Shoom and its customers. Shoom believed that the issue had been concluded once and for all when this Court entered its Final Judgment in this action on April 25, 2008, declaring that Shoom "does not and has not infringed United States Patent Nos. 7,099,837 and 6,505,173." Now more than three years later, however, a new entity, Source 3 Systems, LLC ("Source 3"), has surfaced and resumed eISA's baseless assertions of infringement against Shoom's customers, including filing a new action against USA TODAY International Corporation, an affiliate of Shoom's customer USA TODAY. eISA and its privy Source 3 should be barred from re-litigating claims and issues already decided in this Court years ago.

Shoom originally commenced this action on November 5, 2007, seeking, among other things, a declaration that Shoom's products did not infringe the two patents then owned by Defendant eISA, U.S. Patent Nos. 7,099,837 ("the '837 Patent") and 6,505,173 ("the '173

1   Patent") (collectively, "the patents-in-suit").  Shoom is a leading provider of on-line

2   advertisement tracking and invoicing solutions to the newspaper and magazine industries, and its

3   customers include many of the country's largest print publications including USA TODAY, and

4   in this district, the San Francisco Chronicle and the San Jose Mercury News.

5       Shoom brought suit because eISA—and in particular eISA's President John G. Metsig,

6   one of the named inventors of the patents-in-suit, and eISA's outside attorney Edward Manzo—

7   had been engaged in a campaign of threats and litigation against Shoom's customers and potential

8   customers, claiming that the use of Shoom's services infringed the '837 and '173 Patents and

9   demanding that the customers pay licensing fees to eISA.

10      Despite having been properly served in this case, eISA knowingly and purposefully

11  defaulted.  The Clerk of the Court entered default against eISA on December 12, 2007, and

12  Shoom moved for entry of a Final Judgment in the case promptly thereafter on December 27,

13  2007.  In response to Shoom's motion, Mr. Metsig sent an e-mail to Shoom, acknowledging that

14  he was aware of the suit and expressing eISA's intent to default.  This Court accordingly entered

15  its Final Judgment on April 25, 2008.

16      Unbeknownst to Shoom and the Court at the time, however, in January 2008—facing the

17  impending judgment—eISA assigned the '837 and '173 Patents to one of its investors, Randall

18  Helfrich, who in turn assigned the two patents to a new entity controlled by him, Source 3.  Like

19  eISA before it, Source 3 is led by Mr. Metsig.

20      Through this new entity, Source 3, Mr. Metsig and Mr. Manzo—now representing Source

21  3—have decided to pick up where they left off in 2007.  Mr. Manzo has sent threatening letters

22  on behalf of Source 3 to Shoom's customers, and on June 15, 2011, Source 3 commenced suit

23  against USA TODAY International Corporation in the U.S. District Court for the Northern

24  District of Illinois, Case No. 11-CV-4081 (Holderman, C.J.).

25      Shoom brings the instant motion to request that the Court enforce its prior judgment in

26  this case by (1) enjoining eISA and any current or future assignees of the patents-in-suit,

27  including Source 3, from continuing to assert that Shoom's services—and its customers' use of

28  those services—infringe the patents-in-suit, and (2) directing Source 3 to dismiss the action it

1  filed against USA TODAY International Corporation.  Enforcement of the final judgment in this

2  case is necessary because the assignees of the patents-in-suit continue to interfere with Shoom's

3  relationships with its customers and potential customers, and to cause harm to Shoom's business.

4        This Court has the authority to enforce its own judgment under 28 U.S.C.§ 2202, the All

5  Writs Act, 28 U.S.C. § 1651(a), and its inherent power.  *See* Section I *infra*.  This extends to the

6  entry of a permanent injunction barring further enforcement of the patents-in-suit.  Under the so-

7  called *Kessler* doctrine, first enunciated by the Supreme Court in *Kessler v. Eldred*, 206 U.S. 285

8  (1907), a patent owner may be enjoined from asserting infringement against a customer of a seller

9  who has previously prevailed against the patentee because of non-infringement.  *See* Section II

10  *infra*.

11        The fact that eISA, the original owner of the patents-in-suit, has assigned the patents to

12  another entity (managed by the same person, Mr. Metsig) does not alter this result.  Like any

13  successive owner of property, Source 3 is in privity with eISA and therefore must be bound by

14  the judgment and the injunction as well.  *See* Section III *infra*.  eISA should not be able to avoid

15  the consequences of the Court's judgment against it in this case it by simply transferring the

16  patents-in-suit to another entity, particularly one that is under common control.  If that were

17  allowed, no judgment regarding the infringement or validity of a patent would *ever* be final.

18  Patent owners would be able to avoid a negative ruling simply by assigning their patents to

19  another entity and then re-litigating claims that had already been adjudicated—an untenable

20  result.

21                        **STATEMENT OF FACTS**

22        **A.      Shoom's Business.**

23        Shoom, which began operations in 1996, is a leading provider of on-line advertisement

24  tracking and invoicing solutions to the newspaper and magazine industries, and its customers

25  include many of the country's largest print publications including USA TODAY, the San

26  Francisco Chronicle and the San Jose Mercury News, among others.  *See* Freschi Decl. ¶ 4.

27        Shoom's business involves hosting digitized versions of publications, advertisements

28  placed in the publications, and invoices for the advertisements.  Complaint (Dkt. 1) ¶ 18.  Shoom

1    makes all of these materials easily accessibly on-line to publishers, advertisers and advertising-

2    placement agencies.  *See id.*

3         The primary products that Shoom offers its customers are its "electronic tearsheets" and

4    "electronic invoice" systems.  Compl. ¶¶ 18-19.  These were the products that Shoom offered in

5    2007 when this suit was originally commenced and that were placed at issue by this litigation.

6    *See id.*  Shoom's systems today remain the same as they were in 2007.  Freschi Decl. ¶ 6.

7         **B.    eISA Threats Against Shoom and Its Customers.**

8         On December 3, 2004, Mr. Metsig on behalf of eISA sent a letter to Shoom inviting

9    Shoom to license the '173 Patent.  Freschi Decl. ¶ 7, Ex. A.

10        On or about June 24, 2005, Mr. Metsig sent letters to a number of Shoom's existing and

11   potential customers advising them of the '173 Patent and suggesting that they required a license

12   to utilize any electronic tearsheets or electronic invoice system.  Compl. ¶ 21; Freschi Decl. ¶ 8,

13   Ex. B.

14        Faced with the uncertainty in the marketplace caused by eISA's threats, on August 24,

15   2005, Shoom filed an action seeking a declaratory judgment that its products did not infringe the

16   '173 Patent and that the '173 Patent was invalid, *Shoom v. eISA*, Case No. 05-CV-3434 (Jenkins,

17   J.) ("*Shoom v. eISA I*").  Compl. ¶ 24.

18        eISA successfully moved to dismiss that action—which was decided prior to the Supreme

19   Court's ruling in *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118 (2007), which altered the

20   standard for evaluating declaratory judgment jurisdiction—on the ground that the Court did not

21   have jurisdiction to hear the suit because eISA had not made any explicit threats of litigation prior

22   to Shoom filing suit.  Compl. ¶ 24.  In that suit, eISA's President John G. Metsig submitted a

23   declaration on March 1, 2006 to the Court stating that eISA had no intention of bringing an action

24   against Shoom in connection with Shoom's electronic tearsheets and electronic invoice systems.

25   *Id.*

26        Notwithstanding Mr. Metsig's sworn declaration to the contrary submitted to the Court in

27   *Shoom v. eISA I*, however, eISA proceeded to file suit against Shoom and one of Shoom's

28   customers, Gannett Co., Inc. ("Gannett"), on February 9, 2007 in the U.S. District Court for the

1   Northern District of Illinois, *eISA v. Gannett Co., Inc, et al*, Civil Action No: 07-CV-791.  Compl.

2   ¶ 25.  In that suit, eISA alleged that Shoom and its customer Gannett infringed the '837 Patent—a

3   continuation of the previously-asserted '173 Patent.

4          Shortly after filing the complaint in the *eISA v. Gannett* action, eISA's counsel Edward

5   Manzo (who is now counsel for Source 3) sent a copy of the complaint to Gannett on February

6   12, 2007.  Compl. ¶ 26.  In the letter, Mr. Manzo cited a Shoom press release announcing that

7   USA TODAY, a newspaper owned by a subsidiary of Gannett, would be using Shoom's

8   electronic tearsheets and electronic invoice services, and stated that USA TODAY's use of these

9   systems infringed the '837 Patent.  Compl. ¶26 & Ex. 5.

10          On February 15, 2007, Gannett informed Shoom that it would not enter into a contract

11  with Shoom until the issues regarding eISA's claims could be resolved.  Compl. ¶ 27.  After

12  damaging Shoom's business relationship with Gannett, and with other customers and potential

13  customers by filing the suit, eISA ultimately dismissed the suit against Shoom and Gannett

14  without prejudice on April 13, 2007.  Compl. ¶ 28.

15          **C.     The Present Action.**

16          Given the continued threat of litigation by eISA against Shoom and its customers, and the

17  looming cloud of uncertainty created by the '837 and '173 Patents, Shoom filed this declaratory

18  judgment action against eISA on November 5, 2007.

19          In its Complaint in this action, Shoom sought declaratory judgment of non-infringement

20  of the '837 and '173 Patents.  In particular, The Complaint requested "the Court enter judgment

21  in [Shoom's] favor and against eISA on their Complaint as follows:"

22              A.  Declaring that Shoom's processes do not infringe, and have not
                infringed, any claim of the patents-in-suit;
23

24              B.  Enjoining eISA, their officers, agents, successors and assigns,
                employees, representatives, counsel and all parties acting in concert
                with them, permanently from directly or indirectly asserting or
25              charging that Shoom processes infringe the patents-in-suit;

26              C.  Declaring this an exceptional case, under 35 U.S.C. § 285, and
                rendering an award to Shoom of its reasonable attorneys fees,
27              expenses and costs in this action; and

28

D.  Granting Shoom such other and further relief as this Court deems just and proper.

Although Defendant eISA's agent for service of process was properly served on November 9, 2007 (Dkt. 6), eISA failed to answer the Complaint.  The Clerk of the Court entered default against eISA on December 12, 2007 (Dkt. 12), and Shoom promptly thereafter on December 27, 2007, moved for entry of a Final Judgment in the case (Dkt. 13).  In response to Shoom's motion, Mr. Metsig sent an e-mail to Shoom on January 9, 2008 acknowledging that he was aware of the suit and expressing eISA's intent to default.  Tsai Decl. ¶ 3, Ex. 1.

On April 8, 2008, Magistrate Judge Spero entered a Report and Recommendation regarding Shoom's motion for a Final Judgment.  In his Report and Recommendation, Judge Spero advised this Court to enter "a declaratory judgment that Shoom's processes do not and have not infringed any claim of the '173 or the '837 patents."  (Dkt. 19 at p. 10.)

On April 25, 2008, this Court adopted Judge Spero's Report and Recommendation (Dkt. 22), and entered a Final Judgment against eISA declaring that "Plaintiff does not and has not infringed United States Patent Nos. 7,099,837 and 6,505,173."  (Dkt 23.)

Shoom and its customers, including USA TODAY, have since relied upon this Court's Final Judgment and continued to utilize Shoom's electronic tearsheets and electronic invoice systems without fear of further litigation related to the '837 and '173 Patents.

**D.      eISA's Assignment of the Patents-in-Suit to Source 3.**

Unbeknownst to Shoom and the Court at the time, shortly after the Clerk of the Court entered default against eISA and Shoom moved for entry of a Final Judgment in this case—and only two weeks after eISA's President Mr. Metsig stated eISA's intent to default in this case on January 9, 2008—eISA assigned the two patents-in-suit to another owner.

On January 28, 2008, eISA assigned the '837 and '173 Patents to one of its investors, Randall Helfrich, who in turn immediately assigned the two patents to a new entity controlled by him, Source 3 Systems, LLC ("Source 3"), Tsai Decl. ¶ 4, Ex. 2.  Source 3 was incorporated in Arizona on or about December 28, 2007, the day after Shoom filed its motion for a Final Judgment.  Tsai Decl. ¶ 5, Ex. 3.

1   Source 3's registered agent for service of process is Mr. Helfrich.  *Id.*  Mr. Metsig, the

2   President of eISA at the time of the assignment of the patents to Source 3, is the Managing

3   Director of Source 3.  Tsai Decl. ¶¶ 6-8, Exs. 4-6.  Mr. Manzo, an attorney for eISA and the

4   attorney of record for eISA's assignment of the patents-in-suit to Mr. Helfrich and Mr. Helfrich's

5   assignment of the patents to Source 3 in January 2008, currently represents Source 3 with respect

6   to the enforcement of the patents.  Tsai Decl. ¶¶ 4 & 9, Exs. 2 & 6; Freschi Decl. ¶ 9, Ex. C.

7   Shoom has served Source 3 and all three of these individuals with this motion.

8   Mr. Metsig was convicted in Illinois on January 19, 2011 of Financial Exploitation of an

9   Elderly Person, a Class 3 Felony, for defrauding two of his elderly relatives of approximately

10  $450,000, which he apparently used to invest in his companies.  ¶¶ 10-13, Exs. 8-11.  Mr. Metsig

11  was ordered to pay restitution of $300,000.  *See id.*

12  ### E.  Source 3's Action Against USA TODAY International Corporation and Continued Threats Against Shoom's Customers.

13  Mr. Manzo—now writing on behalf of Source 3—has recently resumed sending letters to

14  Shoom's customers asserting infringement of the '837 Patent and threatening litigation.  *See*

15  Freschi Decl. ¶ 9, Ex. C.  For example, on February 18, 2011, Mr. Manzo sent demand letters to a

16  number of Shoom's customers and potential customers in the publishing industry, including

17  Gannett, the ultimate parent company of both USA TODAY and USA TODAY International

18  Corporation.  *See id.* Ex. C.  In the letters, Source 3 suggested that the targeted publishers should

19  license the '837 Patent from Source 3 to continue use of electronic tearsheets and electronic

20  invoice services.  *Id.*

21  These letters, as did Mr. Manzo's prior letter-writing campaign, are causing uncertainty

22  and doubt among Shoom's existing and potential customers, and are damaging Shoom's business.

23  *See* Freschi Decl. ¶ 10.  In particular, potential Shoom customers have declined to enter contracts

24  for Shoom's electronic tearsheets and electronic invoice systems as a result of these new threats.

25  *See id.* ¶ 11.  Moreover, the National Association of Newspapers ("NAA") an organization

26  representing nearly 2,000 newspapers, has received numerous inquiries from its members—all of

27  whom are either existing Shoom customers or potential customers— regarding Source 3's threats.

28

1   *See id.*  As a result, the entire industry is on alert and virtually frozen until this threat is resolved.

2   *See id.*

3         On June 15, 2011, Source 3 filed an action against USA TODAY International

4   Corporation, an affiliate of Shoom's customer USA TODAY, in the U.S. District Court for the

5   Northern District of Illinois, Case No. 11-CV-4081 (Holderman, C.J.), alleging infringement of

6   the '837 Patent.  Tsai Decl. ¶ 8, Ex. 6.  USA TODAY International Corporation and its parent and

7   affiliates have sought indemnification and defense from Shoom with respect to Source 3's action

8   against USA TODAY International Corporation.  *See* Freschi Decl. ¶ 12.

9         **F.**      **Reexamination of the '837 Patent.**

10        Pursuant to a request by the defendants in an action eISA filed against MerlinOne, Inc.

11  and others (not Shoom customers) in the Northern District of Illinois, *eISA v. MerlinOne, Inc. et*

12  *al.*, Case No. 07-CV-1490,[1] the U.S. Patent and Trademark Office initiated an *ex parte*

13  reexamination of the '837 Patent.  The PTO issued its reexamination certificate on November 30,

14  2010.  Claims 1-6 in the patent were canceled.  Claim 7 was confirmed as patentable.  Claim 8

15  subpart "h" was amended to delete the word "first" before the word "digital" and to add the word

16  "advertisement" between the words "digital" and "document."  Claim 9, dependent on

17  independent Claim 7, and Claims 10-12, all dependent on independent Claim 8, were added to the

18  '837 Patent.

19                                   **ARGUMENT**

20  **I.**      **THE COURT HAS THE AUTHORITY TO ENFORCE ITS FINAL JUDGMENT**
               **BY ENTERING A PERMANENT INJUNCTION.**

21
22        This Court has the power to grant the relief sought by Shoom in this motion pursuant to

23  (1) 28 U.S.C. § 2202, (2) the All Writs Act, 28 U.S.C. § 1651(a), and (3) the Court's inherent

    authority.
24
          As an initial matter, the Declaratory Judgment Act authorizes this Court to grant "[f]urther
25
26  necessary or proper relief based on a declaratory judgment or decree . . . after reasonable notice

27  _____
    [1]  Mr. Manzo continued to represent eISA in the *MerlinOne* action even after the patents had been
    assigned to Source 3.  On March 5, 2008, Mr. Manzo appeared for eISA at a status conference in the case
28  and asked that the case be dismissed without prejudice.  Tsai Decl. ¶ 14, Ex. 12.  The court denied eISA's
    request and dismissed the action with prejudice.

1  and hearing, against any adverse party whose rights have been determined by such judgment."  28

2  U.S.C. § 2202.  This includes the entry of a permanent injunction to enforce the Court's prior

3  judgment in a case by barring subsequent litigation against the declaratory judgment plaintiff

4  and/or its customers.  *See, e.g.*, *Powell v. McCormack*, 395 U.S. 486, 499 (1969) ("A declaratory

5  judgment can then be used as a predicate to further relief, including an injunction.") (citing 28

6  U.S.C. § 2202); *Vermont Structural Slate Co., Inc. v. Tatko Bros. Slate Co., Inc.*, 253 F.2d 29, 29-

7  30 (2d Cir. 1958) (citing 28 U.S.C. § 2202 and affirming entry of permanent injunction against

8  patent holder); *U.S. Galvanizing & Plating Equip. Corp. v. Hanson-Van Winkle-Munning Co.*,

9  104 F.2d 856, 861 (4th Cir. 1939) (holding that 28 U.S.C. § 2202 authorizes a court to grant,

10  "upon the determination of non-infringement, . . . injunctive relief restraining the [patent holder]

11  from harassing [declaratory judgment plaintiff's] customers with suits and notices of

12  infringement…")

13      Likewise, the Court also has the authority to enforce its Final Judgment under the All

14  Writs Act, which provides in relevant part that "all courts established by an Act of Congress may

15  issue all writs necessary or appropriate in aid of their respective jurisdictions."  28 U.S.C.

16  § 1651(a).  It is well-established that the All Writs Act "empowers a district court to issue

17  injunctions to enforce judgments and to reinforce the effects of the doctrines of *res judicata* and

18  collateral estoppel."  *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 961 (9th Cir. 2006) (*quoting Charlton

19  v. Estate of Charlton*, 841 F.2d 988, 989 (9th Cir. 1988)); *see also Trs. of IL WU-PMA Pension

20  Plan v. Peters*, 660 F. Supp. 2d 1118, 1144 -1145 (N.D. Cal. 2009) ("It is established that a

21  federal court has the power to enjoin proceedings in other federal courts, as well as in state courts,

22  under appropriate circumstances.") (White, J.); *In re Mfrs. Life Ins. Co. Litig.*, 2008 WL 4950939

23  (S.D. Cal. Nov. 18, 2008) (permanently enjoining a pending Alabama state action to the extent

24  the action involved claims released as part of a class action settlement).

25      Finally, this Court retains the "inherent power to determine the effect of its judgments and

26  issue injunctions to protect against attempts to attack or evade those judgments."  *U.S. v. Hanover

27  Ins. Co.*, 82 F.3d 1052, 1054 (Fed. Cir. 1996); *accord Heartland By-Products, Inc. v. U.S.*, 424

28  F.3d 1244, 1251-1252 (Fed. Cir. 2005).

1  **II.    THE COURT SHOULD ENTER A PERMANENT INJUNCTION BARRING RE-LITIGATION OF SHOOM'S AND ITS CUSTOMERS' ALLEGED INFRINGEMENT OF THE PATENTS-IN-SUIT.**

2

3      **A.      The *Kessler* Doctrine Supports Entry of Permanent Injunction.**

4          Under the *Kessler* doctrine, first set forth by the Supreme Court in *Kessler v. Eldred*, 206

5  U.S. 285 (1907), this Court should enjoin the owners of the '837 and '173 Patents from

6  continuing to assert any claims against either Shoom or any of its customers relating to the use of

7  Shoom's electronic tearsheets and electronic invoice systems that were at issue in this action.

8          As the Federal Circuit has articulated it:  "The *Kessler* doctrine bars a patent infringement

9  action against a customer of a seller who has previously prevailed against the patentee because of

10  invalidity or noninfringement of the patent; otherwise, the effect of the prior judgment would be

11  virtually destroyed."  *MGA, Inc. v. Gen. Motors Corp.*, 827 F.2d 729, 734 (Fed. Cir. 1987).

12  *Kessler* grants "a limited trade right which is 'the right to have that which [a court has

13  determined] it lawfully produces freely bought and sold without restraint or interference.  It is a

14  right which attaches to its product—to a particular thing—as an article of lawful commerce...."

15  *Id.* (*quoting Rubber Tire Wheel Co. v. Goodyear Tire and Rubber Co.*, 232 U.S. 413, 418-19

16  (1914)); *see also Leishman v. Radio Condenser Co.*, 167 F.2d 890, 893 (9th Cir. 1948) ("It is well

17  settled that, where the owner of a patent and the manufacturer of a device litigate the question

18  whether the device infringes the patent, and the manufacturer obtains an adjudication that it does

19  not, the owner of the patent may be enjoined from asserting such infringement and from

20  prosecuting any action in which such infringement is asserted.") (citing *Kessler*); *U.S.*

21  *Galvanizing & Plating Equip. Corp. v. Hanson-Van Winkle Munning Co.*, 104 F.2d 856, 861 (4th

22  Cir. 1939) ("Upon the adjudication that the machine built by plaintiff did not infringe the patents

23  of defendant, and upon the finding, justified by the evidence, that defendant had been sending

24  notices of infringment [sic] to plaintiff's customers and threatening further litigation under the

25  patent, plaintiff was entitled to an injunction restraining defendant from instituting such suits or

26  sending such notices."); *Unitronics Ltd. v. Gharb*, 532 F. Supp.2d 25, 27-28 (D.D.C. 2008)

27  (entering a permanent injunction where a patent holder continued to assert infringement against a

28

1    manufacturer and its distributors after the manufacturer had previously prevailed in a declaratory

2    judgment action).

3        The *Kessler* case itself remains instructive.  In that case, the patent owner initially filed an

4    action against the manufacturer of allegedly infringing electric cigar lighters.  *Kessler*, 206 U.S. at

5    285.  After the manufacturer prevailed in establishing that its product did not infringe the patent-

6    in-suit, the patent owner proceeded to commence a new action against one of the manufacturer's

7    customers, alleging infringement of the same patent.  *Id.* at 286.  As a result of the patent owner's

8    continuing attempts to improperly enforce its patent, the manufacturer's "customers ceased to

9    send orders for lighters, and even refused to pay for those which had already been delivered." *Id.*

10   Under these facts, the manufacturer then sought and obtained an injunction barring the patent

11   owner from prosecuting any suits against its customers based on their use of the manufacturer's

12   lighters.  *Id.*

13       In affirming the injunction granted by the district court, the Supreme Court held that, "it is

14   [the manufacturer's] right that those customers should, in respect of the articles before the court

15   in the previous judgment, be let alone by [the patent holder], and it is [the patent holder's] duty to

16   let them alone." *Id.* at 289.  Without such an injunction, the Court noted that customers would

17   fear the threat of litigation, which would "diminish [the manufacturer's] opportunities for sale.

18   No one wishes to buy anything if with it he must buy a law suit." *Id.*  Moreover, even

19   unsuccessful suits would "impose upon [the manufacture] the expense of defending many suits in

20   order to maintain the right which, by judgment, has already been declared to exist." *Id.*

21       The exact same reasoning applies here.  This Court entered a Final Judgment in this action

22   that Shoom's electronic tearsheets and electronic invoice systems do not infringe the patents-in-

23   suit. (Dkt. 23.)  Accordingly, the Court should enjoin the owners of the patents-in-suit from

24   continuing to claim that any of Shoom's customers infringe the patents by their use of Shoom's

25   systems.  eISA, and now Source 3, should not be able to continue fostering uncertainty and doubt

26   in the minds of Shoom's customers and potential customers, and damage Shoom's business.

27   Absent an injunction, Shoom might also be forced to defend a multiplicity of lawsuits against its

28

1    customers involving the very same issues that were resolved in this Court.  The Court should not

2    allow this injustice.

3          **B.     *Res Judicata* Principles Also Support Entry Of A Permanent Injunction.**

4          An application of *res judicata* principles leads to the same conclusion as the application of

5    the *Kessler* doctrine.  Indeed, the "[t]he *Kessler* doctrine appears to be nothing more than a

6    patent-specific application of *res judicata* between manufacturers of allegedly infringing products

7    and their customers in patent infringement suits against the customer," *Tech. Licensing Corp. v.*

8    *Thomson, Inc.*, 738 F. Supp.2d 1096, 1101-1102 (E.D. Cal. 2010).

9          *Res judicata* operates to bar re-litigation of claims when there is "(1) an identity of claims;

10   (2) a final judgment on the merits; and (3) identity or privity between parties."  *Providence*

11   *Health Plan v. McDowell*, 385 F.3d 1168, 1174 (9th Cir. 2004).  Each of these elements is

12   satisfied here.

13         *First*, to the extent Source 3 is claiming that the use of Shoom's electronic tearsheets and

14   electronic invoice systems (by USA TODAY or any other of Shoom's customers) infringes the

15   patents-in-suit, this Court has already decided that issue, and there is an identity of claims.  The

16   reexamination of the '837 Patent does not change the analysis, because claims that issue on

17   reexamination are *necessarily* "narrower because section 305 [of the Patent Statute] bars claims

18   that enlarge the scope of original claims."[2]  *Hoffman v. Wisner Classic Mfg. Co., Inc.*, 927 F.

19   Supp. 67, 73 (E.D.N.Y. 1996) (applying *res judicata* to bar claims based on patent that reissued

20   after reexamination "because it has already been concluded that any prior action for infringement

21   of the original patent has been adjudicated in favor of the defendant, [the defendant] cannot now

22   be deemed guilty of infringing this new, narrower patent"); *see also Aspex Eyewear, Inc., et al., v.*

23   *Marchon Eyewear Inc., et. al.*, Slip Copy 2010 WL 4553642, *4 (S.D. Fla. Nov. 3, 2010) (barring

24   the assertion of reissued claims after reexamination when they were substantially identical to the

25   previously issued claims and noting that the "reexamination of the '545 Patent does not entitle

26   Plaintiffs to circumvent claim preclusion").

27

28   [2]  "No proposed amended or new claim enlarging the scope of a claim of the patent will be permitted in a
     reexamination."  35 U.S.C. § 305.

*Second*, this Court's declaratory judgment is a final judgment on the merits.  28 U.S.C. § 2201(a) ("Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.").  That the Court's Final Judgment was entered on a default is of no moment.  Default judgments are considered final judgments on the merits "and are thus effective for the purposes of claim preclusion."  *In re Garcia*, 313 B.R. 307, 311-312 (9th Cir. BAP 2004) (citing *Howard v. Lewis,* 905 F.2d 1318, 1323 (9th Cir. 1990)); *see also Morris v. Jones*, 329 U.S. 545, 550-551 (1947) ("A judgment of a court having jurisdiction of the parties and of the subject matter operates as *res judicata*, in the absence of fraud or collusion, even if obtained upon a default."); *Carey v. U.S.*, 2010 WL 1904841, at *6 (E.D. Cal. May 7, 2010) ("The doctrine of res judicata applies even against a default judgment."); *Am. Express Travel Related Servs. Co., Inc. v. D & A Corp.*, 2007 WL 2462080, at *5 (E.D. Cal. Aug. 28, 2007) ("There is no question that the default judgment is a final judgment on the merits.").[3]

*Third*, as the assignee of the patents-in-suit, Source 3 is in privity with eISA and therefore must be bound by the Court's Final Judgment as well.[4]  *See, e.g.*, *Taylor v. Sturgell*, 553 U.S. 880, 894 (2008) ("nonparty preclusion may be justified based on a variety of pre-existing 'substantive legal relationship[s]' between the person to be bound and a party to the judgment … includ[ing] … *preceding and succeeding owners of property, . . . and assignee and assignor*.") (emphasis added);  *see also Headwaters Inc. v. U.S. Forest Service*, 399 F.3d 1047, 1053 (9th Cir. 2005) ("Privity, traditionally, arose from a limited number of legal relationships in which two parties have identical or transferred rights with respect to a particular legal interest, chiefly: . . . assignors and assignees."); Restatement (Second) of Judgments § 43 (1982) ("A judgment in an

---

[3]  *See also* 18A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 4442 (2d ed. 2002) ("Valid default judgments establish claim and defense preclusion in the same way as litigated judgments, and are equally entitled to enforcement in other jurisdictions.  This consequence follows from the basic functions of default judgments.  In one aspect, default judgments afford an opportunity to surrender without incurring the costs of litigation, either because the claim is thought valid or because the cost of litigation seems greater than the probability and rewards of success.  Plaintiffs could not afford to accept this surrender if the resulting judgment were not final.").

[4]  "[T]he assignee of a patent right takes it subject to the legal consequences of the previous acts of the patentee."  *Worley v. Tobacco Co.*, 104 U.S. 340, 344 (1881).  In other words, the assignee of a patent stands in the "footsteps" of the assignor, and accordingly has "no better title."  *Whitley v. Swayne*, 74 U.S. 685, 687 (1868); *see Meyer Mfg. Co. v. Miller Mfg. Co.*, 24 F.2d 505, 506 (7th Cir. 1928) (assignee's rights were "clearly no better or greater than the rights of its predecessors in title").

action that determines interest in real or personal property with respect to the property involved in the action has preclusive effects upon a person who succeeds to the interest of a party to the same extent as upon the party himself.")

### III.   THE COURT CAN EXTEND A PERMANENT INJUNCTION TO ANY ASSIGNEES OF THE PATENTS-IN-SUIT.

The fact that eISA, the original owner of the patents-in-suit, has assigned the patents to Source 3 does not alter the effect of the *Kessler* doctrine.  *See Vermont Structural Slate Co., Inc. v. Tatko Brothers Slate Co., Inc.*, 253 F.2d 29 (2d. Cir. 1958) (under the *Kessler* doctrine "plaintiff was entitled as of course to an injunction restraining [the patent owner], ***and all persons claiming under the patent***, from bringing any action or otherwise threatening plaintiff on the basis of claims that there is interference with said patent by use of [plaintiff's process] . . .") (emphasis added); *see also Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981) ("A final judgment on the merits of an action precludes ***the parties or their privies*** from relitigating issues that were or could have been raised in that action.") (emphasis added).

Indeed, it is well-settled under Rule 65(d) of the Federal Rules of Civil Procedure that an injunction entered by the Court can extend to the successors and assignees of a party.  In *Golden State Bottling Co., Inc. v. Nat'l Labor Relations Bd.,* 414 U.S. 168 (1973), the Supreme Court expressly rejected an argument that Rule 65(d) is a bar to judicial enforcement of injunctions against parties in privity with the original party to the action.  The Court explained:

> Rule 65(d) 'is derived from the common-law doctrine that a decree of injunction not only binds the defendants but also those identified with them in interest, in 'privity' with them, represented by them or subject to their control.'  Persons acquiring an interest in property that is a subject of litigation are bound by, or entitled to the benefit of, a subsequent judgment, despite a lack of knowledge[.]

*Golden Gate Bottling Co.,* 414 U.S. 168, 179-80 (quoting *Regal Knitwear Co. v. NLRB*, 324 U.S. 9, 14 (1945)).  Accordingly, the Court held that an injunction "may also, in appropriate circumstances, be enforced *against those to whom the business may have been transferred, whether as a means of evading the judgment or for other reasons*."  *Id.* at 178-79 (quoting *Regal Knitwear Co.*, 324 U.S. at 14-15) (emphasis added).

1    The Federal Circuit has followed the Supreme Court's *Regal Knitwear* and *Golden State*

2  *Bottling* cases in affirming injunctions applied to a patent infringer's "successors in interest and

3  assigns." *E.g.*, *Kloster Speedsteel AB v. Crucible Inc.*, 793 F.2d 1565, 1583 (Fed. Cir. 1986),

4  *overruled on other grounds*, *Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.*,

5  383 F.3d 1337 (Fed Cir. 2004) (applying injunction to an entity that "was created immediately

6  after conclusion of the trial and long before judgment").  The Ninth Circuit has likewise held that

7  "successors" and "assignees" are among the "persons bound" by an injunctive order.  *E. & J.*

8  *Gallo Winery v. Gallo Cattle Co.,* 967 F.2d 1280, 1298 (9th Cir. 1992) (holding that if Rule 65(d)

9  did not apply to assignees, "the injunction theoretically might be defeated by assignment").

10    Here, eISA assigned the patents-in-suit to Source 3, apparently for the purpose of avoiding

11  the effect of this Court's Final Judgment declaring that Shoom does not infringe the patents.

12  Under these circumstances in particular, it is appropriate and necessary for this Court to enter a

13  permanent injunction that extends to Source 3 and any future assignees of the patents-in-suit.

14  Otherwise, the Court's Final Judgment and any injunction entered by the Court to enforce that

15  judgment will be ineffective.

16  **IV.    THE EBAY FACTORS FOR ENTRY OF A PERMANENT INJUNCTION ARE
       SATISFIED IN THIS CASE.**

17

18    As a final matter, a permanent injunction is appropriate in this case under the Supreme

19  Court's four-factor test set forth in *eBay Inc. v. Merc Exchange, L.L.C.*, 547 U.S. 388, 391 (2006).

20    Source 3's actions, if left unabated, are causing Shoom to suffer irreparable injury due to

21  lost business opportunities and harm to Shoom's reputation in the industry.  *See id.*, *see also*

22  *Rent-A-Center, Inc. v. Canyon Television & Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th Cir.

23  1991) ("intangible injuries, such as damage to . . . goodwill qualify as irreparable harm."); *Credit*

24  *Bureau Connection, Inc. v. Pardini*, 726 F. Supp. 2d 1107, 1123 (E.D. Cal. 2010) (finding

25  irreparable harm based on interference with existing customer contracts, as well as with the

26  ability to form new contracts).

27    Moreover, any "remedies available at law, such as monetary damages, are inadequate to

28  compensate for [Shoom's] injury."  *eBay*, 547 U.S. at 391.  In *Kessler*, as in the present case, re-

litigation against the manufacturer's customer impaired the manufacturer's previously adjudicated right, and so "it would be difficult to prove, in an action at law, the extent of the damage inflicted." *Kessler,* 206 U.S. at 290; *see also MGM Studios v. Grokster, Ltd.*, 518 F.Supp.2d 1197, 1220 (2007) (no adequate legal remedy where the failure to enter an injunction would result in a "multiplicity of suits" directed to the same issues).

The balance of the equities also weighs heavily in favor of an injunction, as Shoom has already litigated these claims and prevailed, and has been seeking repose from eISA's and Source 3's campaign of harassment for more than six years now. For its part, eISA's conduct has bordered on outright fraud on the Court and should not be rewarded. Among other instances of eISA's bad faith, as discussed above, less than a year after eISA's President Mr. Metsig submitted a sworn declaration to this Court stating that eISA had no intention of bringing a suit against Shoom, eISA filed an action against Shoom in the Northern District of Illinois. In addition, shortly after the Clerk of the Court entered default against eISA in the present action and Shoom moved for entry of a Final Judgment, eISA (without notice to Shoom or this Court) assigned the patents-in-suit to an entity under common control and management, apparently for the purpose of avoiding this Court's Final Judgment.

A permanent injunction would serve the public interest by the conservation of judicial resources and the elimination of duplicitous litigation. *See Center for Food Safety v. Vilsack*, 2011 WL 996343 at *8 (N.D. Cal. March 17, 2011) ("duplicative lawsuits unnecessarily waste judicial resources and create the risk of inconsistent rulings"); *Bradberry v. T-Mobile USA, Inc.*, 2007 WL 2221076 at *4 (N.D. Cal. Aug. 2, 2007) ("the public interest lies in conservation of judicial resources").

**CONCLUSION**

For the foregoing reasons, this Court should enforce its April 24, 2008 Final Judgment in this case, by (1) enjoining eISA and any current or future assignees of the patents-in-suit,

/ / /

/ / /

including Source 3, from continuing to assert that Shoom's services—and its customers' use of those services—infringe the patents-in-suit, and (2) directing Source 3 to dismiss the action it filed against USA TODAY International Corporation.

DATED:  July 27, 2011                              **PERKINS COIE** LLP


By:  /s/ Christopher Kao
          Christopher Kao
          David J. Tsai

Attorneys for Plaintiff
Shoom, Inc.