**NOT FOR PUBLICATION**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHOOM, INC, <br><br> Plaintiff, <br><br> v. <br><br> ELECTRONIC IMAGING SYSTEMS OF AMERICA, INC. <br><br> Defendant. <br> _____ / | No. C 07-05612 JSW <br><br> **ORDER GRANTING IN PART AND DENYING IN PART MOTION TO ENFORCE JUDGMENT** |

**INTRODUCTION**

This matter comes before the Court upon consideration of the Motion to Enforce the Court's Final Judgment filed by Plaintiff, Shoom, Inc. ("Shoom"). The Court has considered Shoom's motion, the opposition filed by Source 3 Systems, LLC, Shoom's reply, relevant legal authority, and the record in this case, and HEREBY GRANTS IN PART AND DENIES IN PART Shoom's motion.

**BACKGROUND**

On November 5, 2007, Shoom filed the Complaint in this case, in which it sought a declaration that it did not infringe, and had not infringed, United States Patent Nos. 6,505,173 (the "'173 Patent") and 7,099,837 (the "'837 Patent") (collectively, the "patents-in-suit"), which, at that time, were owned by the named defendant, Electronic Imaging Systems of America, Inc. ("eISA"). In its prayer for relief, Shoom also asked that the Court enjoin "eISA, their officers, agents, successors and assigns, employees, representatives, counsel, and all parties

acting in concert with them, permanently, from directly or indirectly asserting that Shoom processes infringe the patents in suit." (Docket No. 1, Complaint ("Compl."), Prayer for Relief, ¶ B.) Shoom served eISA through its registered agent on November 19, 2007. When eISA did not answer or otherwise respond, Shoom moved for entry of default and, on December 27, 2007, moved for default judgment. (*See* Docket Nos. 6, 10, 13.)

On April 8, 2008, Magistrate Judge Spero, to whom the case was assigned, issued a report and recommendation ("Report") on Shoom's motion for default judgment. The matter then was reassigned to this Court. (Docket Nos. 19 (Report), 20.) In his Report, Judge Spero recommended that Shoom's motion be granted and recommended that the Court declare that Shoom did not infringe and had not infringed the patents in suit. Although Shoom requested injunctive relief in its Complaint, it did not renew that request in its motion for default judgment. (*See* Docket No. 13.) As such, Judge Spero did not recommend that the Court issue the injunctive relief sought by Shoom. (Report at 10:10-12.) None of the parties objected to Judge Spero's Report. On April 25, 2008, this Court adopted the Report in full, and entered a declaratory judgment in Shoom's favor, but it did not issue any injunctive relief. (Docket Nos. 22, 23.)

Before Shoom instituted this lawsuit, eISA apparently was experiencing financial difficulties. Indeed, on July 25, 2007, WP Company, LLC filed a lawsuit against eISA seeking dissolution of the corporation. (Declaration of Paul K. Vickery ("Vickery Decl."), Ex. 2.) On or about August 27, 2007, Robert P. Handler was appointed Receiver over eISA's assets. (Declaration of Robert P. Handler ("Handler Decl."), ¶ 1.)[1] Thereafter, on January 14, 2008, Handler, as Receiver, sold the patents-in-suit to Randall Helfrich at auction, and Handler then directed that the patents be assigned to Helfrich. (Handler Decl., ¶¶ 2-3.) Helfrich owned

---

[1] Pursuant to Federal Rule of 17, the capacity of a corporation to sue or be sued is determined by the law under which it was organized. Fed. R. Civ. P. 17(b)(2). eISA was an Illinois corporation. Under Illinois law, the fact of dissolution "shall not take away nor impair any civil remedy available to or against such corporation, its directors, or shareholders, for any right or claim existing, or any liability incurred, prior to such dissolution if action or other proceeding thereon is commenced within five years after the date of such dissolution." 805 ILCS 5/12.80.

2

1  approximately 5% of eISA stock, prior to its dissolution. (Declaration of Randall Helfrich
2  ("Helfrich Decl."), ¶ 4.)
3       On June 15, 2011, Source III, filed a lawsuit in the United States District Court for the
4  Northern District of Illinois, asserting that USA Today International Corporation ("USA
5  Today") and The Pantagraph Publishing Company infringe the '837 Patent (hereinafter the
6  "Illinois litigation"). According to Shoom, USA Today has requested that Shoom defend and
7  indemnify it in the Illinois litigation. (Declaration of William Freschi ("Freschi Decl."), ¶ 12.)[2]
8       The Illinois litigation prompted Shoom to file the instant motion, in which it asks this
9  Court to enforce the judgment by issuing an injunction against eISA and any current or future
10 assignees of the patents-in-suit from continuing to assert that Shoom's services - and its
11 customers' use of those services - infringe the patents-in-suit and directing Source III to dismiss
12 the Illinois litigation.

**ANALYSIS**

14      Procedurally, Shoom contends that the Court has authority to grant the relief it seeks
15 pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2202[3], the All Writs Act, 28 U.S.C. §
16 1651(a)[4], and the Court's inherent authority. Because Shoom is asking for injunctive relief, it
17 also must establish: "(1) that it has suffered an irreparable injury; (2) that remedies available at
18 law, such as monetary damages, are inadequate to compensate for that injury; (3) that,
19 considering the balance of hardships between [Shoom and eISA], a remedy in equity is
20 warranted; and (4) that the public interest would not be disserved by a permanent injunction."
21 *eBay Inc. v. Merc Exchange, L.L.c.*, 547 U.S. 388, 391 (2006).

---

[2] The complaint in that action has since been amended to name Gannett Satellite Information Network, Inc. ("Gannett") as a defendant, in place of USA Today. (Reply Declaration of David Tsai ("Tsai Reply Decl."), ¶ 4, Ex. 2.)

[3] "Further necessary or proper relief based on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment."

[4] "The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law."

Substantively, Shoom relies heavily on *Kessler v. Eldred*, 206 U.S. 285 (1907) in support of its motion. In the *Kessler* case, the patent owner, Eldred, had sued Kessler previously for infringement of a patent related to a cigarette lighter. *Kessler*, 206 U.S. at 285, 287-88. In that suit, Kessler prevailed. Thereafter, Edlred sued one of Kessler's customers for infringing the same patent, and Kessler assumed the defense of that lawsuit. *Id*. at 286, 288. Kessler then filed suit against Eldred and succeeded in obtaining an injunction to enjoin Elred from "prosecuting any suit in any court of the United States against any one for alleged infringement of the [patent-in-suit] by purchase, use, or sale of any" lighter manufactured by Kessler. *Id.* at 286. The Supreme Court upheld the injunction, on the basis that if Eldred were able to continue to file suits relating to products that did not infringe, "the result will be practically to destroy Kessler's judgment right." *Id.* at 290. In brief, "[t]he *Kessler* doctrine bars a patent infringement action against a customer of a seller who has previously prevailed against the patentee because of invalidity or noninfringement of the patent; otherwise, the effect of the prior judgment would be virtually destroyed." *MGA, Inc. v. General Motors Corp.*, 827 F.2d 729, 734 (Fed. Cir. 1987).

The Supreme Court subsequently interpreted *Kessler* as granting a limited trade right, *i.e.* "the right to have that which it lawfully produces freely bought and sold without restraint or interference. It is a right which attaches to its product—to a particular thing—as an article of lawful commerce and it continues only so long as the commodity to which the right applies retains its separate identity. If that commodity is combined with other things in the process of the manufacture of a new commodity, the trade right in the original part as an article of commerce is necessarily gone." *Rubber Tire Wheel Co. v. Goodyear Tire and Rubber Co.*, 232 U.S. 413, 418-19 (1914).

Shoom argues that application of the *Kessler* doctrine is appropriate in this case, because eISA's former president, John Metsig, and its former counsel, Edward Manzo, are clearly involved with Source III. For example, Source III alleges that "one of its executives who is one of the named inventors of the patent-in-suit" resides in Barrington, Illinois. (Tsai Reply Decl., Ex. 2 (Second Amended Complaint, ¶ 2.) John Metsig, who had been eISA's president, is the

4

only named inventor on the '837 Patent who lives in Barrington, Illinois. In addition, Manzo sent letters on eISA's behalf in 2007 relating to the patents-in-suit, and he has recently sent letters on Source III's behalf relating to the '837 Patent. (*See* Declaration of David Tsai in Support of Motion to Enforce Judgment ("Tsai Supp. Decl."), ¶ 9, Ex. 7; Freschi Decl., ¶¶ 9-10, Ex. C.) Shoom argues that the Court should infer from these facts that eISA is attempting to avoid the effect of the judgment in this case. However, the record also shows that Source III obtained the patents-in-suit in what appears to be an arms length transaction. In any event, it is clear to this Court that Manzo and Metsig are involved with Source III and, thus, at least some of eISA's principal players are involved in continued litigation of the patents-in-suit.

As set forth above, the *Kessler* doctrine grants a "limited" trade right and provides a party who has prevailed in a patent litigation a measure of certainty that it may manufacture, use or sell a product that has been deemed not to infringe without fear of continued litigation. The *Kessler* doctrine also affords a party's customers a measure of certainty that their decision to purchase or use a product will not be met with litigation. *See Kessler*, 206 U.S. at 289 ("No one wishes to buy anything if with it he must buy a lawsuit.").

In support of its motion for default judgment, Shoom's counsel submitted a declaration in which he attested that:

> The past and current methods of Shoom do not infringe upon the patents in suit. I have personally navigated the public and private areas of Shoom's web portal, witnesses a live on-line demonstration of Shoom's invoice production, studied Shoom instructional literature such as "Data Requirements for Shoom e-Invoices," and Shoom's source code, interviewed Shoom's CTO and have carefully read the patents in suit and their respective file wrappers. In a nutshell, the patents in suit describe and claim methods of scanning or creating newspaper advertisements or invoices whereas Shoom receives pre-press production copies of newspaper advertisements and receives invoices generated by newspapers. Shoom neither scans nor creates newspaper copy or invoices. The dichotomy between the scanning methods of the eISA patents and the more modern pre-press production methods of Shoom is well documented in *Electronic Tear Sheets Gain Momentum* (2001) published by the National Newspaper Association of America.

(Docket No. 14, Declaration of Steven A. Nielsen in Support of Motion for Default Judgment, ¶ 10.)

5

Source III does not dispute that this Court has determined that Shoom's products do not infringe the '837 Patent, and it states that it does not contend that Shoom infringes the '837 Patent. (*See, e.g.,* Opp. Br. at 8:22-23; Tsai Reply Decl., Ex. 1 at 12:15-16.) However, Source III argues that Mr. Neilsen's declaration does not establish that Shoom's customers do not practice the methods of the asserted claims of the '837 Patent when they use Shoom's products. (*See* Opp. Br. at 9:2-10:12.)[5] The Court finds that, on the existing record, it is not clear whether or not Shoom's customers use of Shoom's products would practice the steps of the asserted claims of the '837 Patents, even if Shoom does not. Thus, the Court is shall not issue an injunction that states eISA, its successors, and assigns are precluded from continuing to assert that Shoom's customers' use of those services infringe the patents-in suit. The Court finds that question is best resolved in the Illinois litigation.

However, the Court does find that Shoom has established that it is entitled to the injunctive relief that it originally sought in its complaint. As such, the Court HEREBY ORDERS that eISA, its officers, agents, successors and assigns, employees, representatives, counsel, and all parties acting in concert with them are enjoined, permanently, from directly or indirectly asserting that Shoom processes infringe the patents in suit. Shoom's motion is granted, in part, on this basis. Shoom also asks that Court order Source III to dismiss the Illinois litigation. That request is DENIED.

**CONCLUSION**

For the forgoing reasons, Shoom's Motion to Enforce Judgment is GRANTED AND PART AND DENIED IN PART.

**IT IS SO ORDERED.**

Dated: October 4, 2011

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE

---

[5] Source III also argues that *Kessler* should not apply because the '837 Patent is a method patent. The Court finds this argument unpersuasive.

6